IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CLIFFORD DALE NELSON and
PATRICIA SNOW,

                    Plaintiffs,

v.

FAY SERVICING, LLC; US BANK, N.A.
AS OWNER TRUSTEE OF THE VRMTG
ASSET TRUST,

                    Defendants.

No. 3:22-cv-01911-HZ

OPINION & ORDER

Theodore J. Piteo
Michael D. O'Brien & Associates, P.C.
12909 S.W. 68th Pkwy, Suite 160
Portland, OR 97223

        Attorneys for Plaintiffs

Thomas N. Abbott
Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128

        Attorneys for Defendants

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

This matter comes before the Court on Defendants' Motion to Dismiss. ECF 17. For the reasons that follow, the Court grants Defendants' Motion and dismisses Plaintiffs' claims with leave to amend as set out in this Opinion and Order.

## BACKGROUND

The following facts are taken from Plaintiffs' Complaint and the parties' filings related to Defendants' Motion to Dismiss.

In June 2007 Plaintiffs Clifford Dale Nelson and Patricia Snow refinanced their residence in Beavercreek, Oregon. Group One Lending was the mortgage lender, Security Title Guaranty was the trustee. The mortgage loan was secured by a Deed of Trust recorded on April 10, 2007. At some point Group One Lending transferred Plaintiffs' mortgage loan to CitiMortgage.

On December 26, 2010, Plaintiffs filed a voluntary chapter 13 bankruptcy petition. On November 11, 2011, Plaintiffs filed a Notice of Loan Modification Terms & Chapter 13 Trustee Approval in the bankruptcy proceeding. The Notice advised that "mortgage creditor CitiMortgage, Inc. has offered and debtors have accepted" a loan modification that set out various monthly principal and interest payments on the loan beginning December 1, 2011 and continuing through January 1, 2050. Abbott Decl., ECF 18, Ex. C.

On February 19, 2014, Fannie Mae filed a Transfer of Claim with the bankruptcy court advising that CitiMortgage had transferred Plaintiffs' mortgage loan to Fannie Mae "c/o Seterus, Inc." Abbott Decl., Ex. D at 1.

On March 4, 2015, Plaintiffs "began experiencing issues with the Mortgage Loan." Compl. ¶ 11. Plaintiffs tendered a monthly payment to Seterus. Seterus "received . . . and cashed" the payment, but did not apply the payment to Plaintiffs' mortgage loan. Seterus "began

charging Plaintiffs late[] fees and other charges and began to receive and improperly impound their mortgage payments." *Id.* at ¶ 12.

On December 8, 2015, Plaintiffs sent their first letter to Seterus stating that Plaintiffs' records "indicate[d] that Seterus has received all of our mortgage payments in full and on time," and requesting Seterus review its records and provide Plaintiffs "with documentation that it has rectified any and all false information Seterus has provided to Credit Reporting Agencies." Abbott Decl., ECF 18, Ex. E.

On January 14, 2016, Seterus responded to Plaintiffs' letter noting its records "indicate[d] that no funds were received from you during March 2015, which resulted in a contractual Delinquency [and that] . . . the loan is contractually delinquent for the December 1, 2015 contractual installment." Abbott Decl., Ex. F at 1. Seterus also enclosed a copy of Plaintiffs' payment history.

On November 13, 2017, Plaintiffs tendered their November 2017 mortgage payment to Seterus. Seterus, however, returned Plaintiffs' check for insufficient payment. Abbott Decl., Ex. G.

On December 7, 2017, Plaintiffs tendered their December 2017 mortgage payment to Seterus. Seterus "received and cashed Plaintiffs Mortgage Loan payment but did not apply it to the" mortgage loan. Compl. ¶ 16. Plaintiffs do not allege that they communicated with Seterus about the November or December 2017 payment issues.

In May 2019 Seterus transferred servicing of Plaintiffs' mortgage loan to Nationstar Mortgage, LLC, dba Mr. Cooper ("Nationstar") "while it was purportedly in default." Compl. ¶ 17.

On September 5, 2019, Plaintiffs submitted a mortgage loan payment to Nationstar, which was "received and cashed by Nationstar Mortgage, LLC but it was not applied to the Mortgage Loan or placed in a suspense account." Compl. ¶ 18.

On April 21, 2021, Plaintiffs "sent a Qualified Written Request [QWR]" to Nationstar asserting they had made every mortgage payment "on time and in the correct amount" and that "[a]ll penalties, excessive accrued interest and other costs are the result of error on the part of the servicing departments of Seterus and Nationstar." Compl., ¶ 24, Ex. 5 at 1. Plaintiffs requested "updated amortization schedules showing corrected amounts" and correction of "issues concerning [Plaintiffs'] credit scores." *Id.*

On May 28, 2021, Nationstar responded to the QWR, addressed each of Plaintiffs' payments including check number and date from January 2015 through January 2021, and enclosed copies of its transaction history and returned funds notices as well as Seterus' denial letters, account statements, transaction history, notices of intent to foreclose, notices of returned funds, receipt of payment letter, trial period plan information, and welcome letter. Abbott Decl., Ex. H.

On October 6, 2021, Nationstar transferred servicing of Plaintiffs' mortgage loan to Defendant Fay Servicing LLC ("Fay"). Fay asserts the mortgage loan was in default at the time of the transfer. "Pursuant to § 1 of the Deed of Trust, Fay elected to return payments submitted by Plaintiffs because they were insufficient to bring the Loan current." Defs.' Mot. to Dismiss at 7.

On November 17, 2021, "Plaintiffs drafted a [QWR] and Notice of Error to FAY (the "NOE")." Compl. ¶ 26. Plaintiffs again asserted they had made every mortgage payment "on time and in the correct amount" and that "[a]ll penalties, excessive accrued interest and other

costs are the result of error on the part of the servicing departments of Seterus and Nationstar."
Compl., Ex. 6 at 1-2. Plaintiffs requested "updated amortization schedules showing correct
amounts." *Id.*

On December 13, 2021, Fay responded to Plaintiffs' letter, advising that "[a]fter
conducting a reasonable investigation [it] has determined that no error occurred." Abbott Decl.,
Ex. I at 1. Fay enclosed the transaction histories from Seterus and Nationstar from February 2014
through May 2021, Nationstar's response to Plaintiffs from May 2021, and other correspondence
and notices from Seterus and Nationstar relating to the accounting for the mortgage loan
including Seterus and Nationstar's responses to Plaintiffs' allegations of misapplied payments.

On February 23, 2022, Plaintiffs sent Fay a QWR in which they requested various
documents related to Plaintiffs' mortgage loan history including payment history, servicing
notes, mortgage statements, and copies of prior QWR letters. Compl. Ex. 7.

Fay acknowledged receipt of the February QWR on March 2, 2023, and advised
Plaintiffs that it would provide a full response within 30 days. Abbott Decl. Ex. J. On March 16,
2022, Fay provided its full response to Plaintiffs' letter including many of the same enclosures
provided to Plaintiffs in December 2021 and adding copies of all billing statements and other
accounting information totaling 429 pages. Abbott Decl., Ex. K.

At some point Fay "began its process of sending notice of default letters to Plaintiffs
continuing monthly through the date of the filing of [the] Complaint." Compl. ¶ 29.

On December 9, 2022, Plaintiffs filed a Complaint in this Court against Fay and U.S.
Bank N.A. ("USB"), asserting claims for violation of the Real Estate Settlement Procedures Act
("RESPA"), 12 U.S.C. § 2605, against Fay; breach of contract against "all parties in privity of
contract"; violation of the covenant of good faith and fair dealing against Fay and USB; violation

of the Oregon Unfair Trade Practices Act ("OUTPA"), Oregon Revised Statute §§ 646.608 and

646.638 against Fay and USB; violation of the Fair Debt Collection Practices Act ("FDCPA"),

15 U.S.C. § 1692, against Fay; and elder financial abuse in violation of Oregon Revised Statute

§ 124.110 against Fay.

On May 30, 2023, Defendants filed a Motion to Dismiss. The Court took Defendants'

Motion under advisement on July 25, 2023.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the

sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in

the complaint as true and construe them in the light most favorable to the non-moving party.

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under

Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief"

with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations

must be enough to raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote

omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-

pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

On a motion to dismiss, the court "may consider materials incorporated into the complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)(citations omitted). The Ninth Circuit has "extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Id.* (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705, 706 n.4 (9th Cir. 1998), *rev'd by statute on other grounds*.

## DISCUSSION

### I.    Predecessor in Interest

Defendants assert Plaintiffs' claims should be dismissed in their entirety to the extent that they are based on the actions of "predecessor in interest" servicers rather than on the actions of Fay. Defendants point out that Plaintiffs have not brought this action against Seterus or Nationstar and the vast majority of the allegations of wrongdoing in the Complaint relate to actions by Seterus and/or Nationstar. In fact, the only factual allegations of actions by Fay are that Fay failed to send written acknowledgments of Plaintiffs' November 2021 and February 2022 QWRs within five business days of receipt of those letters and that although Fay responded to the February 2022 QWR its response "failed to include all the requested information." Compl. ¶ 28. Defendants assert that to the extent that Plaintiffs seek to hold them liable for the alleged bad acts of Seterus and/or Nationstar, they are not liable for the alleged acts or omissions of those prior servicers and Plaintiffs' claims should be dismissed.

In their Response Plaintiffs assert they "are not specifically relying on a 'successor liability' theory," however, they also assert Defendants "and their predecessors in interest created a rolling delinquency which they have utilized to enrich themselves." Pls.' Resp. at 2, 7.

[T]here has been little written about the liability of subsequent servicers for their predecessors' bad acts." *Mendez v. Selene Fin. LP*, No. 216CV09335ODWFFM, 2017 WL 6940522, at *3 (C.D. Cal. Feb. 7, 2017). In *Mendez*, however, the court concluded the successor mortgage loan servicer could not be held liable for the alleged failure to credit the plaintiff's mortgage payments on a successor-in-interest theory or any agency theory. The court noted that under California law to establish successor liability, "a subsequent servicer must purchase the previous servicer's principal assets and qualify for one of the four exceptions to the general rule that a successor in interest does not assume the previous interest holder's liabilities." *Id*., at *4 (citation omitted). The four exceptions are (1) when "there is an express or implied agreement to assume specific liabilities"; (2) when "the transaction amounts to a consolidation or a merger of the two corporations"; (3) when "the purchasing corporation is a mere continuation of the seller"; and (4) when "the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Id*. at *4 n.5 (citation omitted). The court noted that the plaintiff "failed to allege that his current servicer acquired his former servicer's principle assets or" facts to establish "that any exception to the general rule applies." *Id.* The court, therefore, granted the defendant's motion to dismiss.

Similarly, under Oregon law even if a predecessor servicer "sells or otherwise transfers all of its assets to [a subsequent servicer], the latter is not liable for the debts and liabilities of the transferor" unless one of the following "well recognized exceptions under which the purchasing corporation becomes liable for the debts and liabilities of the selling corporation" is met:

> (1) Where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporations; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts.

*Gonzalez v. Standard Tools & Equip. Co.*, 270 Or. App. 394, 397 (2015). As in *Mendez*, Plaintiffs here do not allege Seterus and/or Nationstar sold or otherwise transferred to Fay all of their asserts nor do Plaintiffs allege any facts to support an inference that any of the exceptions to the general rule apply. Accordingly, to the extent that Plaintiffs rely on predecessor liability to support their claims against Fay, the Court concludes that Plaintiffs have not pled sufficient facts to indicate Fay is liable for the acts of Seterus and/or Nationstar under a predecessor-in-interest theory of liability. The Court, therefore, grants Defendants' Motion to Dismiss to the extent that Plaintiffs' claims are based on a predecessor-in-interest theory of liability.

## II.    Recoupment and Set Off

Plaintiffs allege in their Response that Defendants "were asserting amounts due which did not account for the Plaintiffs funds [*sic*] previously paid on the Mortgage Loan," therefore, the multi-year, multi-servicer series of events is a "single integrated transaction." Pls.' Resp. at 7-8. According to Plaintiffs "any defenses the parties have to payment of or recovery related to [the] note follow the transfer . . . rather than [stay with] . . . the original or current participants in that transaction." *Id*. Plaintiffs note "recoupment . . . allows parties to assert set off rights against any collection action on a note." *Id.* Plaintiffs then state they have alleged a right to setoff amounts already paid on the mortgage loan and "[a]s a result th[e] Court can consider the actual amount owed to Defendants by the Plaintiffs without reference to who accepted the payments related to the integrated transaction of the Mortgage Loan." *Id.*

Despite Plaintiffs' statement in their Response, the Complaint does not contain any allegations of recoupment or set off. In addition, recoupment and set off are legal defenses that Plaintiffs have not established apply here. Set off is a "'money demand by the defendant against the plaintiff arising upon contract and constituting a debt *independent of and unconnected with the cause of action* set forth in the complaint.'" *Jones v. Four Corners Rod & Gun Club*, 290 Or. App. 811, 823 (2018), *rev'd in part on other grounds,* 366 Or. 100 (2020)(quoting *Rogue River Management Co. v. Shaw*, 243 Or. 54, 59 (1966)(emphasis in *Rogue River*). Recoupment "is similar to setoff, except that it is 'confined to matters *arising out of and connected* with the transaction upon which the action is brought.'" *Jones*, 290 Or. App. at 822 (quoting *Rogue River*, 243 Or. at 58-59)(emphasis in *Jones*), Recoupment "abates the plaintiff's claim, or put another way, means the cutting back of the plaintiff's claim by the defendant." *Jones*, 290 Or. App. at 823.

Plaintiffs do not point to any authority for a plaintiff's ability to assert a claim for set off or recoupment under circumstances similar to those here. As noted, these are legal defenses that act to "cut[] back" a plaintiff's claim not affirmative claims that may be brought by a plaintiff in order to receive credit for payments to a defendant. If Defendants brought this action seeking payment by Plaintiffs of allegedly unpaid mortgage loan amounts or asserted a counterclaim for payment, the concepts of set off or recoupment might apply in theory. Under the posture of this case, however, they are inapplicable. Accordingly, to the extent Plaintiffs assert a claim for set off or recoupment, the Court concludes Plaintiffs have not and cannot state those claims.

## III.    RESPA

Plaintiffs allege Fay violated RESPA, 12 U.S.C. § 2605, and Regulation X, 12 C.F.R. § 1024.35 when Fay failed to timely acknowledge and respond to Plaintiffs' November 2021 letter

and February 2022 QWR. Fay asserts that it was not required to acknowledge Plaintiffs' November 2021 letter within five days because Plaintiffs mailed to the wrong address, Plaintiffs fail to plead actual damages resulting from Fay's allegedly inadequate QWR responses, and Plaintiffs fail to plead a pattern and practice of noncompliance with RESPA for statutory damages.

### A.    RESPA Provisions

RESPA provides in pertinent part:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower . . . for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days.
>
> * * *
>
> Not later than 30 days . . . after the receipt from any borrower of any qualified written request . . . the servicer shall -
>
> > (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction . . .;
> >
> > (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes -
> >
> > > (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer;

12 U.S.C.A. § 2605(e)(1)(A), (e)(2)(A)-(B).

Regulation X provides servicers must respond to a notice of error by a borrower by either "[c]orrecting the error or errors identified by the borrower," 12 C.F.R. § 1024.35(e)(1)(i)(A) or by

> [c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has

> determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i)(B). Servicers must "comply with the requirements of paragraph (e)(1)" of Regulation X " not later than 30 days . . . after the servicer receives the applicable notice of error," except in circumstances not applicable here. 12 C.F.R. § 1024.35(e)(3)(i)(C).

### B.    November 2021 Letter

Plaintiffs sent their November 17, 2021 letter to Fay at 3000 Professional Drive, Springfield, Illinois and P.O. Box 88009, Chicago, Illinois. Compl., Ex. 6 at 1. Fay's designated address for QWRs and notices of error, however, was 901 South Second Street, Suite 201, Springfield, Illinois. Fay noted this address on its welcome letter and on each monthly account statement. Fay asserts, therefore, that it did not have any legal obligation to respond to Plaintiffs' letter.

Regulation X provides that servicers "may, by written notice provided to a borrower, establish an address that a borrower must use to submit a notice of error" and "may, by written notice provided to a borrower, establish an address that a borrower must use to request information." 12 C.F.R. §§ 1024.35(c), 1024.36(b). The requirements for servicers to respond to QWRs or notices of error flow from receipt of the correspondence by the servicer at the proper designated address. Because Plaintiffs did not send the November 2021 letter to the address properly designated by Fay for QWRs or notices of error, Fay did not have a legal duty to respond to the letter.[1] The November 2021 letter, therefore, does not support Plaintiffs' claim for violation of RESPA.

---

[1] Nevertheless, Fay responded to Plaintiffs' November 17, 2021 letter on December 13, 2021.

C.     **February 2022 Letter**

Plaintiffs allege Fay "failed to timely acknowledge receipt and respond" to Plaintiffs' February 2022 QWR. Compl. ¶ 27. Plaintiffs also assert that Fay's response "failed to include all the requested information from Plaintiffs'" QWR. Compl. ¶ 28. Fay asserts it timely and completely responded to Plaintiffs' February 2022 QWR and/or Plaintiffs fail to plead actual damages resulting from Fay's alleged notification failures.

1.     **Compliance**

Regulation X provides: "Within five days . . . of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error." 12 C.F.R. § 1024.35(d). The record reflects Fay sent Plaintiffs an acknowledgment of receipt of Plaintiffs' QWR on March 2, 2022, which was within five days of Fay's receipt of the letter. In addition, Fay investigated and responded to Plaintiffs' QWR not later than 30 days after it received the letter. Fay, therefore, complied with the time requirements of Regulation X and RESPA with respect to Plaintiffs' February 2022 letter.

Fay also asserts that its response complied with RESPA because it included copies of all of the documents and information that Fay relied on "in making its determination that no error occurred." 12 C.F.R. § 1024.35(e)(4). Regulation X requires servicers to provide borrowers with "copies of documents and information relied upon by the servicer in making its determination." 12 C.F.R. § 1024.35(e)(4). RESPA and Regulation X, however, do not require servicers to provide borrowers with all information they request. As the Ninth Circuit explained "the letter must request information relating to servicing," therefore, "the statutory duty to respond does not arise with respect to *all* inquiries or complaints from borrowers to

servicers." *Medrano v. Flagstar Bank, FSB,* 704 F.3d 661, 666 (9th Cir. 2012)(emphasis in original). "RESPA defines the term 'servicing' to encompass only 'receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest and such other payments.'" *Id*. (quoting 12 U.S.C. § 2605(i)(3)).

> Servicing . . . does not include the transactions and circumstances surrounding a loan's origination - facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement. Such events *precede* the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors.

*Id*. at 666-67 (emphasis in original). The court concluded, therefore, that "that letters challenging only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under § 2605(e)." *Id*. at 667. Although Plaintiffs do not specify in the Complaint or their Response what documents or information they requested that Fay failed to provide, it appears that some of the information they requested did not constitute documents or information related to "servicing" within the meaning of RESPA, but instead related to the transactions and circumstances surrounding the mortgage loan's origination. For example, Plaintiffs requested "[t]he full name, address, and telephone number of the current owner of the original mortgage note AND the name and number of the trust or pool, if applicable"; and "[c]opies any broker price opinions for the above-referenced mortgage loan or confirmation that none were obtained." Compl., Ex. 7 at 2. Fay was not required to respond to that portion of Plaintiffs' letter and its failure to provide documents or information that were not related to servicing as set out in *Medrano*, does not state a claim for violation of RESPA.

### 2. Damages

Finally, Fay asserts that Plaintiffs have not stated a claim for violation of RESPA because they have not alleged any facts supporting any actual damage that directly resulted from Fay's alleged failure to provide unspecified documents or information requested by Plaintiffs. Fay notes Plaintiffs also have not pled facts sufficient to establish a pattern or practice of noncompliance with RESPA by Fay for statutory damages.

RESPA provides:

Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

* * *

In the case of any action by an individual, an amount equal to the sum of -

(A) any actual damages to the borrower as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

12 U.S.C. § 2605(f)(1). "RESPA requires that plaintiffs establish that any RESPA violation resulted in actual damages. . . . [S]tatutory damages are allowed as "additional" damages to the actual damages, and only upon the finding of a pattern or practice of noncompliance." *Lettenmaier v. Fed. Home Loan Mortg. Corp.*, No. CV-11-156-HZ, 2011 WL 3476648, at *12 (D. Or. Aug. 8, 2011), supplemented, No. CV-11-156-HZ, 2011 WL 3476661 (D. Or. Aug. 8, 2011). *See also Schwartz v. Christiana Tr.*, No. 3:15-CV-02075-PK, 2016 WL 3512441, at *6 (D. Or. June 2, 2016), report and recommendation adopted, No. 3:15-CV-02075-PK, 2016 WL 3512069 (D. Or. June 27, 2016)(same).

In their Complaint Plaintiffs allege Fay failed to comply with RESPA and Regulation X and "Plaintiffs have suffered damages as alleged above" in their factual allegations. Compl. ¶ 36. In paragraphs 33 and 34 of the Complaint Plaintiffs allege "Defendants [*sic*] . . . failure to timely respond to requests for information . . . caused the Plaintiff [*sic*] to suffer from excessive stress, nausea, anxiety, and strain of the seemingly inevitable loss of the home." Compl. ¶ 33. Plaintiffs "also incurred economic damages for the gas and mileage on their vehicles in attempting to fix this problem in an estimated amount of $800, fax, copy, check, and supply costs in attempting to fix the payment application mistakes and the subsequent improper accounting thereafter, in an estimated amount of $1000." Compl. ¶ 34. In their Response Plaintiffs state they "suffered actual damages as a result of Fay's failures . . . by incurring additional costs and charges to obtain the information related to their requests from other sources." Pls.' Resp. at 12.

The Ninth Circuit has not decided whether emotional distress satisfies the actual damages requirement of RESPA. Even assuming, however, that emotional distress satisfies the requirement, the Complaint does not include any plausible factual allegations how Fay's failure to provide unspecified documents requested by Plaintiffs was the proximate cause of Plaintiffs' emotional distress or the expenses incurred by Plaintiffs rather than the actions of prior servicers Seterus and Nationstar or Fay's efforts to foreclose. Plaintiffs, therefore, have not plead facts sufficient to establish they suffered actual damages under RESPA. *See, e.g., Amelina v. Selene Fin. LP*, No. 21-CV-00512-CAB-LL, 2021 WL 4267401, at *3 (S.D. Cal. Sept. 20, 2021)(Even assuming emotional distress satisfies the actual damages provision of RESPA, "the FAC fails to include any plausible factual allegations how Defendants' failure to respond to the

notices of error . . . and not Selene's efforts to foreclose, was the proximate cause of foreclosure fees or emotional distress suffered by Plaintiff."); *Kelly v. Clear Recon Corp*, No. 3:19-CV-00185-TMB, 2021 WL 3611025, at *9 (D. Alaska Aug. 13, 2021)(finding the plaintiffs' allegations of emotional damages to be insufficient noting the plaintiffs "make no effort, in the TAC or their briefing, to explain how it is plausible, rather than merely possible, that LoanDepot's silence *caused* discrete damages in the form of emotional and psychological distress after its alleged RESPA violation.")(emphasis in original).

Fay also asserts Plaintiffs have not pled sufficient facts to indicate Fay engaged in a "pattern or practice of noncompliance with" RESPA. Plaintiffs allege in their Complaint that Fay engaged in a "pattern of [*sic*] practice of noncompliance with RESPA by engaging in conduct in violation of RESPA multiple times with respect to Plaintiffs" as set out in their Complaint and that Fay "has previously been sanctioned by the Consumer Financial Protection Bureau for violations of RESPA and on or about June 2017, they entered into a Consent Judgment where they were permanently enjoined from violating certain requirements of RESPA, which mirror some of the allegations of Plaintiffs detailed above." Compl. ¶¶ 39-40. Fay notes Plaintiffs allege only two instances in which they allege Fay failed to comply with RESPA: the failure to respond to the November 2021 letter and the allegedly inadequate response to the February 2022 QWR. As noted, only the February 2022 QWR satisfies RESPA's requirements. The Court concludes that a single failure to adequately respond to a QWR does not constitute a pattern or practice of noncompliance with RESPA by Fay as to Plaintiffs. *See Asare-Antwi v. Wells Fargo Bank, N.A.,* 855 F. App'x 370, 373 (9th Cir. 2021)("a single alleged failure to respond to a QWR is not a pattern or practice entitling [the plaintiff] to statutory damages"). In addition, Plaintiffs' allegation that Fay entered into a Consent Judgment and was permanently

enjoined from violating certain requirements of RESPA four years before it became the servicer of Plaintiffs' mortgage loan does not establish that Fay had a pattern or practice of violating RESPA in 2021 in the way that Plaintiffs allege Fay violated it in this matter. The Court, therefore, concludes Plaintiffs have not alleged facts sufficient to support RESPA statutory damages.

In summary, the Court concludes Plaintiffs have not stated claims for violation of RESPA. The Court, therefore, and grants Defendants' Motion to Dismiss these claims.

**IV.    Breach of Contract**

Plaintiffs bring a claim for breach of contract against "all parties in privity of contract." Compl. at 11. Plaintiffs allege they and "Defendants entered into a binding contract where Plaintiffs were required to make monthly principal and interest payments on the Mortgage Loan," Plaintiffs made all of their payments "in a timely fashion," Defendants "and or their authorized Agents . . . improperly failed to correctly apply and account for Plaintiffs prior payments," and "these breaches have caused Plaintiffs to be subjected to improper fees and charges applied to the Loan." Compl. ¶¶ 44-46. Plaintiffs assert Fay is acting as USB's agent on the mortgage loan and, therefore, it is in privity of contract with Plaintiffs.

Courts in Oregon, however, have consistently concluded that loan servicers are not parties to the deed of trust or note and are not in privity with the owner of the loan or mortgage even when they are allegedly acting as the agent of the owner and within the scope of its agency. *See, e.g., Singh v. Shellpoint Mortg. Servicing,* No. 3:18-CV-01374-HZ, 2019 WL 5902111, at *7 (D. Or. Nov. 11, 2019)("A loan servicer is not a party to a deed of trust."); *Hoa Van Nguyen v. Specialized Loan Servicing LLC,* No. 3:18-CV-655-SI, 2018 WL 4059292, at *4 (D. Or.

18 – OPINION & ORDER

Aug. 24, 2018)("SLS, as a loan servicer, is not a party to the DOT or Note."); *Nguyen v.*

*Madison Mgmt. Servs*., LLC, No. 3:16-CV-00263-BR, 2016 WL 4708535, at *8 (D. Or. Sept. 7,

2016)("Plaintiff alleges only that Defendant was acting in the scope of its agency as the

agent/servicer for the owner of the loan mortgage. FAC at ¶ 329. A loan servicer, however, is not

a party to a deed of trust."). In addition, under Oregon law the agent of a party to a contract is not

themselves a party to that contract. *See Wiggins v. Barrett & Assocs., Inc.* 295 Or. 679, 698

(1983)("a person making or purporting to make a contract with another as agent for a disclosed

principal does not become a party to the contract")(quotation omitted). Accordingly, the Court

concludes Plaintiffs have not and cannot state a claim for breach of contract as to Fay. The

Court, therefore, and grants Defendants' Motion to Dismiss this claim as to Fay.

## V.      Breach of Implied Contract of Good Faith and Fair Dealing

Defendants move to dismiss Plaintiffs' claim for violation of good faith and fair dealing

on the basis that Plaintiffs have not and cannot establish a contract between Fay and Plaintiffs,

therefore, they also cannot state a claim for breach of the implied contract of good faith and fair

dealing.

"A claim for breach of the implied contractual obligation of good faith and fair dealing

requires the existence of a contract between the parties." *Nguyen*, 2016 WL 4708535, at *8

(citation omitted). As noted, Oregon courts have consistently concluded that loan servicers are

not parties to the deed of trust or note and agents of parties to a contract are not themselves party

to the contract. The Court, therefore, concludes Plaintiffs have not alleged facts sufficient to

establish a contract between Fay and Plaintiffs. Accordingly, Plaintiffs have not stated a claim

for the implied contractual obligation of good faith and fair dealing as to Fay. The Court,

therefore, and grants Defendants' Motion to Dismiss this claim as to Fay.

## VI.   OUTPA

Plaintiffs allege "all Defendants" violated OUTPA §§ 646.608[2] and 646.638.[3] Specifically, Plaintiffs allege "Defendants and their authorized agents acting in the course and scope of their engagement employed unconscionable tactics in dispensing with their duties in servicing the Mortgage Loan and advising Plaintiffs as described." Compl. ¶ 55.

Defendants move to dismiss Plaintiffs' OUTPA claim on the basis that § 646.608 does not apply to loans that originated before 2010. Initially the OUTPA did not apply to any loans or extensions of credit. *See Lamm v. Amfac Mortg. Corp.*, 44 Or. App. 203, 205 (1980)(holding the Oregon "Unfair Trade Practices Act is not applicable to loans or extensions of credit."). In 2010 the OUTPA was amended to apply to "certain loans and extensions of credit," however, courts have concluded that amendment is inapplicable to mortgage loans in which a deed of trust was granted before the 2010 amendment. *See, e.g., Mikityuk v. Nw. Tr. Servs., Inc.*, 952 F. Supp. 2d 958, 962 (D. Or. 2013)(dismissing the plaintiffs' OUTPA claim with prejudice noting "[l]eave to amend, under any section of the UTPA, is futile. Plaintiffs obtained the [mortgage] loan in 2003. The UTPA, however, did not apply to "extensions of credit" in 2003."); *Roisland v. Flagstar Bank, FSB*, 989 F. Supp. 2d 1095, 1108 (D. Or. 2013)("The UTPA is inapplicable to a [mortgage] loan transaction that occurred prior to its amendment in 2010.")(collecting cases)); *Hernandez v. BAC Home Loan Servicing, LP*, No. 3:12-CV-00106-MO, 2012 WL 1941745, at *3 (D. Or. May 23, 2012)(granting the defendant's motion to dismiss the plaintiff's OUTPA claim on the basis that his mortgage loan and deed of trust originated in 2006).

---

[2] Oregon Revised Statute § 646.608(1) contains 79 subsections detailing ways in which one might violate the statute. Plaintiffs do not specify under which subsection or subsections they bring their claim.

[3] Oregon Revised Statute § 646.638 sets out the parameters of civil actions by private parties for violations of § 646.608.

Plaintiffs assert "mortgage servicers may be liable under the UTPA and OARs for bad faith actions, even if the mortgage loan was originated prior to 2010." Resp. at 6. Plaintiffs rely on *Collis v. Rushmore Loan Mgmt. Servs. LLC*, No. 6:17-CV-02062-JR, 2019 WL 2488705 (D. Or. Feb. 7, 2019). In *Collins* the court found the plaintiff could bring a OUTPA claim against the mortgage servicer even though the loan originated before 2010. In reaching that conclusion the court examined the Oregon Court of Appeals decision in *Cullen v. Inv. Strategies, Inc*., 139 Or. App. 119 (1996). *Cullen* involved a mortgage broker who, in the course of securing a personal residential loan for the plaintiffs, failed to disclose that the loan carried a "higher than market interest rate" allowing the defendant to recover a larger fee from the actual lender. *Id*. at 122. The court found that a "non-lender's material nondisclosures or material misrepresentations regarding the character, quality, or cost of such services [was] actionable under the UTPA. Thus, for example, a residential loan broker who misrepresents the costs of its brokerage services is subject to UTPA liability." *Id*. at 127. The *Collins* court found the plaintiff stated an actionable claim under the OUTPA because she alleged the defendant servicer "failed to pay her property taxes as promised, ensured her that it had paid the taxes, failed to return her phone calls, and refused to provide her an accounting." 2019 WL 2488705, at *2. The court noted these claims were in the nature of misrepresentations regarding the quality or character of the servicer's services rather than issues pertaining to the mortgage loan's attributes such as interest rate or payment amounts. *Id*.

The Court finds that Plaintiffs' allegations in this matter are more similar to those in *Mikityuk, Roisland,* and *Hernandez* than those in *Collins*. The Court, therefore, concludes Plaintiffs have not stated a claim for violation of the OUTPA because the mortgage loan in this matter originated in 2007; Plaintiffs do not allege Fay misrepresented the quality or character of

its services; and USB is not a "non-lender," and, therefore, even the narrow circumstances in
*Collins* do not apply to USB. Accordingly, the Court concludes Plaintiffs have not stated a claim
for violation of the OUTPA. The Court, therefore, grants Defendants' Motion to Dismiss this
claim.

## VII.    FDCPA

Plaintiffs allege Fay is a debt collector and violated the FDCPA when it made false
representations "concerning the collection of the Mortgage Loan" and about "the legal status of
the debt and its ability to foreclose on the Mortgage Loan," "continued pursuit of Foreclosure
when it should have acknowledged its improper payment application and imposition of charges
and removed improper fees and charges," and "communicated directly with a represented party."
Compl. ¶ 57.

Defendants move to dismiss Plaintiffs' FDCPA claim on the grounds that Fay is not a
debt collector within the meaning of the FDCPA and, even if Fay is a debt collector, it did not
violate the FDCPA.

The FDCPA defines "debt collector" as "any person who uses any instrumentality of
interstate commerce or the mails in any business the principal purpose of which is the collection
of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or
due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). That section also notes,
however, that "[f]or the purpose of section 1692f(6) of this title, such term also includes any
person who uses any instrumentality of interstate commerce or the mails in any business the
principal purpose of which is the enforcement of security interests." *Id*. In *Obduskey v.
McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019), the Supreme Court evaluated whether the
latter language of § 1692a(6) "mean[s] that one principally involved in 'the enforcement of

security interests' is *not* a debt collector (except '[f]or the purpose of section 1692f(6)')?" *Id.*, at 1031 (emphasis in original). The Court concluded the "last sentence [of § 1692a(6) does . . . place those whose 'principal purpose . . . is the enforcement of security interests' outside the scope of the primary 'debt collector' definition, § 1692a(6), whe[n] the business engaged in is no more than the kind of security-interest enforcement at issue here - nonjudicial foreclosure proceedings." *Id.* In addition, the Ninth Circuit has held that "actions taken to facilitate a non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect 'debt' as that term is defined by the FDCPA." *Vien-Phuong Thi Ho v. ReconTrust Co., NA*, 858 F.3d 568, 572 (9th Cir. 2017).

After *Obduskey* courts grappling with "whether and when the enforcement of a security interest in property triggers the prohibitions on unfair debt-collection practices set forth in the" FDCPA often "placed weight on the distinction between judicial and non-judicial foreclosure in deciding whether the FDCPA applies to the enforcement of a security interest in property." *Barnes v. Routh Crabtree Olsen PC*, 963 F.3d 993 (9th Cir. 2020). In *Barnes*, however, the Ninth Circuit, relying on *Obduskey*, concluded the applicability of the FDCPA "turns not on the foreclosure forum but on whether the foreclosure plaintiff seeks to recover any debt beyond the proceeds from the sale of the foreclosed property." *Id.* at 995. Specifically,

> if the [servicer] seeks not only to foreclose on the property but also to recover the remainder of the debt through a deficiency judgment, the [servicer] is attempting to collect a debt within the meaning of the FDCPA. But if the [servicer] is simply enforcing a security interest by retaking or forcing a sale of the property, without regard to any additional debt that may be owed, the [FDCPA] does not apply.

*Id.* at 995-96. *Barnes* involved judicial foreclosure efforts in Oregon. The Ninth Circuit noted "Oregon strictly circumscribes the availability of a deficiency judgment when a person judicially enforces a residential deed of trust." *Id.* at 999-1000. Specifically, under Oregon law "a judgment

to foreclose a residential trust deed . . . may not include a money award for the amount of the debt against the grantor." Or. Rev. Stat. § 86.797(2). "This provision, formerly codified at § 86.770(2), 'prohibits deficiency judgments regardless whether the creditor forecloses judicially or through a trustee sale.'" *Barnes*, 963 F.3d at 1000 (quoting *Connelly v. Derwinski*, 961 F.2d 129, 131 (9th Cir. 1992)). "Judicial foreclosure in Oregon 'extinguishes the entire debt even if it results in a recovery of less than the amount of the debt.'" *Id.* (quoting *Ho,* 858 F.3d at 572). The Ninth Circuit, therefore, concluded that judicial foreclosure proceedings in Oregon are "not a form of debt collection when" they are only "efforts to effectuate" the foreclosure and foreclosure proceedings. *Id*. at 1001.

The Court concludes that Plaintiffs have not and cannot allege facts sufficient to establish that Fay is a debt collector within the meaning of the FDPCA pursuant to *Obduskey, Ho,* and *Barnes*. Fay's actions do not constitute debt collection within the meaning of the FDPCA. Fay is alleged only to have participated in efforts to effectuate or to facilitate foreclosure of the property and Fay cannot obtain a deficiency judgment. Accordingly, the Court concludes Plaintiffs have not stated a claim for violation of the FDCPA. The Court, therefore, grants Defendants' Motion to Dismiss this claim.

## VIII.   Elder Abuse

Plaintiffs allege Fay is liable to Plaintiff Snow for financial elder abuse because Snow "is over 65 years of age and is considered a 'vulnerable person' pursuant to ORS 124.100" and Fay "and their [*sic*] predecessors in interest wrongfully attempted to and did collect funds from Plaintiff Patricia Snow that they were not entitled to." Compl. ¶¶ 3, 60. Defendants move to dismiss Plaintiffs' elder abuse claim on the basis that Plaintiffs have not alleged Snow was over

65 at the "at the time of the challenged transactions" by Fay and/or that Fay used improper means to collect funds from Snow.

Oregon Revised Statute § 124.100(2) provides "[a] vulnerable person who suffers . . . damage . . . by reason of . . . financial abuse may bring an action against any person who has caused the . . . financial abuse." In addition, § 124.110(1)(a) provides in pertinent part: "An action may be brought under ORS 124.100 for financial abuse . . . [w]hen a person wrongfully takes or appropriates money or property of a vulnerable person," A "vulnerable person means . . . [a]n elderly person." O.R.S. § 124.100(1)(e). An "elderly person means a person 65 years of age or older." O.R.S. § 124.100(1)(a).

"A statutory claim for [elder] financial abuse has four elements: there must be (1) a taking or appropriation (2) of money or property (3) that belongs to an elderly or incapacitated person, and (4) the taking must be wrongful." *Church v. Woods*, 190 Or. App. 112, 117 (2003). "Conduct . . . is 'wrongful' if it is carried out in pursuit of an improper motive or by improper means." *Id*. at 118 (citation omitted). "Improper means must be independently wrongful by reason of statutory or common law, beyond the mere fact of the injury complained of," and includes, for example, "'violence, threats, intimidation, deceit, misrepresentation, bribery, unfounded litigation, defamation and disparaging falsehood.'" *Id.* (quoting *Conklin v. Karban Rock, Inc.*, 94 Or. App. 593, 601 (1989)). In addition, the victim of alleged elder abuse must be "an elderly person" within the meaning of the statute "at the time of the challenged transactions." *Church.* 190 Or. App. at 117.

As noted, Defendants point out that Plaintiffs do not allege in the Complaint that Snow was over 65 "at the time of the challenged" actions taken by Fay. Defendants also state in their Motion that documents in the Plaintiffs' mortgage loan file indicate that Snow's date of birth is

November 30, 1956. Snow, therefore, was not age 65 until November 30, 2021, and the only allegations of actions taken by Fay after that date are Fay's alleged failure to sufficiently respond to Plaintiffs' November 17, 2021, letter and February 2022 QWR. Defendants, however, fail to point to evidence in the record of Snow's birthday. The Court, therefore, concludes only that Plaintiffs fail to allege Snow was over 65 at the time of the challenged actions by Fay.

In addition, as noted, the only allegations concerning actions taken by Fay are Fay's allegedly inadequate responses to Plaintiffs' November 2021 letter and February 2022 QWR. Even if Fay's allegedly inadequate responses to these letters constituted a taking or appropriation of money or property, which is questionable, Plaintiffs have not pled facts from which the Court could infer that Fay had an improper motive in its responses to Plaintiffs' QWR and/or letter or that Fay used improper means in responding to those. The Court, therefore, concludes Plaintiffs have not stated a claim for elder abuse and grants Defendants' Motion to Dismiss this claim.

## IX.    Leave to Amend

When "a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment." *Superclinics USA, Inc. v. JPMorgan Chase Bank, N.A.,* No. 223CV00699ODWMAAX, 2023 WL 5007873, at *2 (C.D. Cal. Aug. 4, 2023)(citing Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)). "Leave to amend may be denied when 'the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Id.* (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)). "Thus, leave to amend 'is properly denied . . . if amendment would be futile.'" *Id. Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011)).

The Court grants Plaintiffs leave to file an amended complaint to the extent that they can cure the defects set out in this Opinion and Order as to their claims for violation of RESPA related to the February 2022 QWR, *i.e.,* Plaintiffs can allege Fay failed to provide documents relevant to servicing that were requested by Plaintiffs and alleged damages that specifically flowed from Fay's alleged failure to provide those documents. The Court also grants Plaintiffs leave to amend their Complaint to state a claim for violation of the OUTPA as to Fay to the extent that Plaintiffs can allege Fay misrepresented the quality or character of its services as set out in this Opinion and Order. Finally, the Court grants Plaintiffs leave to amend their Complaint to cure the deficiencies set out in their claim for elder abuse.

The Court, however, concludes amendment would be futile as to all of Plaintiffs' claims in so far as they are premised on predecessor-in-interest liability, Plaintiffs' claims for violation of RESPA related to the November 2021 letter, breach of contract as to Fay, breach of the implied covenant of good faith and fair dealing as to Fay, violation of the OUTPA as to USB, and violation of the FDCPA, and dismisses those claims with prejudice.

## CONCLUSION

For these reasons, the Court GRANTS Defendants' Motion to Dismiss. ECF 17. The Court grants Plaintiffs leave to file an Amended Complaint no later than October 2, 2023, limited to the claims noted above and to the extent Plaintiffs' can cure the defects in those claims

as set out in this Opinion and Order.

IT IS SO ORDERED.


DATED: ___September 15, 2023___.



_____
MARCO A. HERNÁNDEZ
United States District Judge